UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| DARRELL L. MILES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5: 15-CV-126-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| DON BOTTOM, Warden, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

**** **** **** ****

This matter is before the Court to conduct an initial screening of the second amended complaint filed by inmate Darrell Miles pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A.

**I**

Miles is presently confined at the Kentucky State Penitentiary in Eddyville, Kentucky. Proceeding without counsel, on May 7, 2015, Miles filed a motion seeking a preliminary injunction to compel prison officials at the Northpoint Training Center ("NTC") where he was then confined to house him in a two-man cell to prevent other inmates from placing feces in his mouth while he slept. [R. 1] The Court construed Miles's motion as a civil rights complaint pursuant to 42 U.S.C. § 1983, granted his motion to proceed *in forma pauperis*, and ordered NTC Warden Don Bottom to be served with process to address his claims. [R. 5, 7] Miles filed an amended complaint on May 22, 2015. [R. 10]

Shortly after Miles was transferred to the Little Sandy Correctional Complex ("LSCC") on June 5, 2015 [R. 12], Warden Bottom filed a motion to dismiss the original complaint [R. 13]. Miles responded by filing a "Proposed Amended Complaint and Response Memorandum," a 17-page document that included both legal arguments in response to the motion to dismiss and new allegations and legal claims against new defendants. [R. 18-1] Miles filed with his motion/response a new complaint that corrected numbering errors in the original, but which did not include any of the new claims which his motion/response suggested he wanted to assert. [R. 18-2]

On October 28, 2015, the Court entered an Order granting Miles's motion to file his second amended complaint, denying Warden Bottom's motion to dismiss without prejudice, and accepting the warden's invitation [R. 24] to conduct a screening of Miles's second amended complaint pursuant to 28 U.S.C. §§ 1915(e)(2), 1915A, before proceeding. [R. 27] In doing so, the Court directed the Clerk to file the complaint Miles actually tendered into the record [R. 18-2] as his Second Amended Complaint. [R. 27 at 6] However, it is now clear that the document Miles tendered [R. 18-2] is substantively identical in all respects to his prior complaint [R. 10], and that he failed to file his proposed second amended complaint as a single document containing all of his

2

allegations and claims as he should have.  Nonetheless, because Miles is proceeding *pro se*, the Court will consider both his existing complaint [R. 28] and that portion of his "Proposed Amended Complaint and Response Memorandum" [R. 18-1] which sets forth his new allegations and claims as collectively constituting his second amended complaint for purposes of conducting an initial screening.

## II

Miles alleges that on May 1, 2014, he was placed in segregation pending investigation of a claim by Officer Sara Buckingham that he had shown her a note in an attempt to convince her to participate in an illegal scheme. [R. 28 at 4, 31-33]  The note was never found, and although it is unclear if Miles was charged or convicted of misconduct, he was released from segregation on May 27, 2014.  [R. 28 at 5, 19]

Miles was assigned to Dorm 4, B-side, the same location where Officer Buckingham was assigned to work.  On June 19, 2014, Miles filed a grievance claiming that Officer Buckingham's assignment to his prison wing placed him at risk of again being accused of misconduct – falsely, he contends – by Officer Buckingham.  Senior Captain Bridgette Gillihand denied that grievance on July 1, 2014; Warden Don Bottom denied Miles's appeal on July 21, 2014; and LaDonna Thompson, Commissioner of the Kentucky Department of

Corrections ("KDOC") denied his final appeal on August 1, 2014.
[R. 28 at 5-9, 32-33]

Miles alleges that beginning in July 2014 his "mail started coming up missing." [R. 28 at 5] He further alleges that starting in August 2014 he began to be "attacked" with feces. Specifically, Miles explains that each of these "attacks" involved other inmates placing human feces in his mouth after he fell asleep, and in some instances touching his buttocks. Miles also contends without explanation that these attacks were orchestrated by "the defendants" as part of a conspiracy to retaliate against him for filing his grievance. [R. 28 at 6-7, 10-11]

Miles further alleges that he told officers Earl Walls, Brad Adams, and Craig Hughes about the attacks in October 2014, by letter and in person, but that Walls and Hughes refused to transfer him to a different wing. Miles states that Hughes told him that he had reviewed footage from security cameras, but saw nothing to indicate that Miles was being attacked in his sleep. [R. 28 at 7-9] After Miles again complained of such attacks in late January 2015, Lt. Epperson transferred him to Dorm 2 Side A on January 28, 2015. Miles therefore claims that Warden Bottom and officers Adams, Hughes, and Walls were deliberately indifferent to his safety by failing to transfer him to a different portion of the prison. [R. 28 at 9-10]

4

Miles further alleges that the attacks continued to occur
every night even after he was transferred.  He indicates that
Officer Godbey was advised of the attacks on February 11, 2015,
but took no action to prevent them.  [R. 28 at 10-11]  Miles
requested protective custody from Officer Mendalyn Cochran on
February 24, 2015.  However, Officer Stephanie Hughes returned
Miles to the general population eight days later because the cell
was needed.  [R. 28 at 11]  Miles alleges that his television had
been stolen from the property room during this time, an act he
characterizes as "another form of retaliation for requesting
[protective custody]."  [R. 28 at 11-12]

Miles alleges that as a result of ingesting feces on a nightly
basis, he suffered soreness in his throat, neck, joints, kidneys,
and shoulder, as well as weight loss, headaches, and vomiting.
Miles separately claims that the medical care provided by staff
under the direction of Rick Rowlette was "most inefficacious."
[R. 28 at 11]  On March 11, 2015, Miles sent Officer Cochran a
letter identifying specific times that he alleged he had been
attacked.  Miles was again offered protective custody, but he
declined.  Miles alleges that he sought medical attention on March
13, 2015 to remove dog feces from his throat; he indicates that he
was treated for a bacterial infection, but was not given anything

to remove the feces, and was only told to gargle.  [R. 28 at 12-13]

Miles sought protective custody on March 14, 2015, and Lt. Crain was assigned to investigate his claims.  However, after Crain reviewed video footage from surveillance videos, Miles alleges that "he didn't report what he saw in the video."  [R. 28 at 13] Miles indicates that on March 27, 2015, Officers Gary Prestigiacomo and Stephanie Hughes ordered that he be removed from protective custody and returned to the general population notwithstanding the continuing risk to his health and safety.  [R. 28 at 13-14]

Miles contends that when Deputy Warden Rick Rowlette denied a grievance Miles filed on April 1, 2015, he acted with deliberate indifference in violation of Miles's Eighth Amendment rights and retaliated against Miles for filing the grievance in violation of his First Amendment rights.  [R. 28 at 14, 15]  He further contends that by refusing to protect him from these nightly attacks, the defendants are intentionally inflicting emotional distress upon him.  [R. 28 at 16]

In his second amended complaint, Miles asserts four claims in three counts.  In his first count, he contends that the defendants acted with deliberate indifference to his health and safety in violation of the Eighth Amendment by failing to protect him from these attacks while he slept.   He separately contends that

6

defendant Rowlette failed to examine him for signs of disease and responded to his health grievance in an arbitrary manner.  [R. 28 at 17-18]  Miles's Count II includes two separate claims:  (1) that the defendants retaliated against him in violation of the First Amendment by failing to protect him from the attacks after he filed an inmate grievance requesting separation from Officer Buckingham, and (2) that the defendants' failure to protect him was the result of unlawful discrimination in violation of the Fourteenth Amendment, either on the basis of race or as a "class of one."  [R. 28 at 19-22]  Count III of Miles's complaint claims that the defendants' actions constitute the intentional infliction of emotional distress under Kentucky law.  [R. 28 at 23-25]

The additional claims in Miles's second amended complaint are derived from a portion of his "Proposed Amended Complaint and Response Memorandum."  [R. 27-1 at 1-11]  Miles claims that the actions of the defendants violated numerous federal criminal statutes, including those prohibiting hate crimes, assault with dangerous weapon, and sexual abuse of a federal inmate.  [R. 27-1 at 1, 8, 11 (citing 18 U.S.C. §§ 113, 242, 249, 2243, 2246]  Miles also claims that because the Clerk of the Court never sent him a notice that the complaint he mailed to the Court on May 19, 2015, was received, Officer Sandra Helm must have confiscated or destroyed it, thus interfering with his right of access to the

7

courts and obstructing mail in violation of 18 U.S.C. § 1701.
[R. 27-1 at 2-3]   Miles also alleges that psychologist Angela
Caudill and psychiatrist Dr. Meeks conducted an examination of him
in December 2014 and January 2015, and that psychologist Courtney
Welsh ordered that he be placed in an observation cell and held
there for three days in June 2015.   He characterizes this as
inhumane treatment in violation of the Eighth Amendment [R. 27-1
at 2-5, 8-9], but he does not allege that he suffered any resulting
harm.   Finally, Miles alleges that in June 2015 psychologist Welsh
"placed a psychological override" on him, which had the effect of
keeping him in a higher security facility than was warranted by
his security scores.   [R. 27-1 at 6-7]

### III

The Court's screening of Miles's complaint requires it to
dismiss any claim that is frivolous or malicious, fails to state
a claim upon which relief may be granted, or seeks monetary relief
from a defendant who is immune from such relief.   *Hill v. Lappin*,
630 F. 3d 468, 470-71 (6th Cir. 2010).   The Court affords the
plaintiff's pro se complaint a forgiving construction, accepting
as true all non-conclusory factual allegations and liberally
construing its legal claims in the plaintiff's favor.   *Davis v.
Prison Health Servs.*, 679 F.3d 433, 437-38 (6th Cir. 2012).

First, Miles's claims that the defendants violated various federal criminal statutes must be dismissed.  Because a private citizen lacks a judicially cognizable interest in the criminal prosecution of another, *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973), a civil plaintiff has no standing to assert a claim arising under a criminal statute.  *Chrysler Corp. v. Brown*, 441 U.S. 281, 316 (1979) ("This Court has rarely implied a private right of action under a criminal statute, and where it has done so 'there was at least a statutory basis for inferring that a civil cause of action of some sort lay in favor of someone.'").  See *Kafele v. Frank & Wooldrige Co.*, 108 F. App'x 307 (6th Cir. 2004) (no private cause of action under 18 U.S.C. § 242).  Courts have uniformly found that there is no private right of action which a civil plaintiff may assert under criminal statutes such as those Miles identifies here.  Cf. *Hopson v. Louisville Metro Police*, No. 3:13-CV-188-H, 2013 WL 3563164, at *2 (W.D. Ky. July 11, 2013) (dismissing civil claim under 18 U.S.C. § 249 for lack of standing); *Jermano v. Taylor*, No. 11-10739, 2012 WL 4021115, at *6 (E.D. Mich. July 30, 2012) (same).

The Sixth Circuit has held that under rare circumstances a civil plaintiff may sue under 18 U.S.C. § 113 for an assault. *Chumney v. Nixon*, 615 F. 3d 389, 391-95 (6th Cir. 1980).  But that statute only applies to assaults committed "within the special

maritime and territorial jurisdiction of the United States," 18

U.S.C. § 113(a), and ordinary state land does not qualify.   18

U.S.C. § 7; *United States v. Moradi*, 706 F. Supp. 2d 639, 624 (D.

Md. 2010); see also *United States v. Gabrion*, 517 F. 3d 839, 852

(6th Cir. 2008).   These claims will therefore be dismissed with

prejudice.

 Second, Miles's claim that Officer Sandra Helm confiscated or

destroyed the complaint he mailed to the Court on May 19, 2015

[R. 27-1 at 2-3] is factually meritless: the complaint was received

and filed on May 22, 2015.   [R. 10]

 Third, Miles's claims against psychologist Angela Caudill,

psychiatrist Dr. Meeks, and psychologist Courtney Welsh [R. 27-1

at 2-9] will be dismissed for failure to state a claim.   While

Miles characterizes their evaluation of him as "inhumane," he

offers no explanation why this is so.   These claims must be

dismissed because Miles has failed to allege anything more than

labels and conclusions.  *Bell Atlantic Corp. v. Twombly*, 550 U.S.

544, 555 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

("Threadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.").

Further, "... because such [a psychological] evaluation is not an

atypical or significant hardship, it cannot amount to cruel or

unusual punishment.").  *Molesky v. Walter*, 931 F. Supp. 1506, 1512

(E.D. Wash. 1996) (citing *In Keenan v. Hall*, 83 F.3d 1083 (9th Cir. 1996)).   Miles also does not allege that he suffered any resulting harm, and thus fails to satisfy the physical injury requirement of 42 U.S.C. § 1997e(e).  *Jackson v. Hill*, 569 F. App'x 697 (11th Cir. 2014) (inmate's claim that he was required to undergo "undue psychological screening and evaluation" failed to satisfy § 1997e(e)); *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002) ("[T]o avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*.").  Further, Miles's complaint that a "psychological override" affected his security classification fails to state a claim of constitutional dimension. *Molesky*, 931 F. Supp. at 1512.

Fourth, Miles's claim in Count III that the defendants' conduct constituted the intentional infliction of emotional distress under Kentucky law [R. 28 at 23-25] must be dismissed for failure to state a claim.   The Kentucky Supreme Court has repeatedly held that the tort of outrage is a "gap-filler" tort that will not lie if a more traditional tort applies. Cf. *Childers v. Geile*, 367 S.W.3d 576, 581-83 (Ky. 2012) (citing *Rigazio v. Archdiocese of Louisville*, 853 S.W.2d 295 (Ky. App. 1993)).  Here, Miles contends that the officers committed a constitutional tort

under the Eighth Amendment by failing to protect him from the nighttime attacks.  Where the facts alleged support a claim for a traditional tort, with mental suffering merely providing support for the measure of damages claimed, the claim for the tort of outrage will not stand.  *Id*. at 582; *Litsey v. Allen*, 371 S.W.3d 786, 789 (Ky.App. 2012) ("Where an actor's conduct amounts to the commission of one of the traditional torts such as assault, battery, or negligence for which recovery for emotional distress is allowed, and the conduct was not intended only to cause extreme emotional distress in the victim, the tort of outrage will not lie.") (citations omitted).  Because Miles's allegations fall squarely within the type of conduct supporting a failure to protect claim, his tort of outrage claim must fail.

Fifth, Miles's equal protection claim for unlawful discrimination in violation of the Fourteenth Amendment will be dismissed for failure to state a claim.  Miles claims that "the defendants" – whom he does not identify - discriminated against him based upon his race. [R. 28 at 19]  But Miles does not describe any conduct at all by the defendants that would support this legal conclusion, and his allegations therefore fail to state a claim. *Grinter v. Knight*, 532 F. 3d 567, 577 (6th Cir. 2008) (affirming dismissal of inmate's claim of racial discrimination because

12

"plead[ing] a legal conclusion without surrounding facts to support the conclusion … fails to state a claim.").

Miles's assertion that he was discriminated against as a "class of one" [R. 28 at 20-21] fares no better.  It is unclear in the Sixth Circuit whether a plaintiff may assert a "class of one" claim where he separately asserts discrimination based upon membership in a protected class.  *Davis v. Prison Health Servs.*, 679 F. 3d 433, 440-442 (6th Cir. 2012).  Assuming such a claim is available, the plaintiff must allege that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).  But Miles does not state a "class of one" claim because he does not support his naked allegation that others in his situation were treated differently with facts.  *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010) ("To satisfy [the Equal Protection Clause's] threshold inquiry, [plaintiffs] must allege that [they] and other individuals who were treated differently were similarly situated in all material respects.").  His conclusory legal assertion that he "was treated differently from those similarly situated" does not suffice.  *Iqbal*, 556 U.S. at 678 ("A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

13

inference that the defendant is liable for the misconduct alleged."); *Twombly*, 550 U.S. at 555 (complaint must plead enough facts "to raise a right of relief above the speculative level...."); *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008).

What remains are Miles's claims that all of the defendants violated his rights under the Eighth Amendment by failing to protect him from the attacks, and violated his rights under the First Amendment because that failure was intentionally done in retaliation for his filing of the June 19, 2014 grievance. [R. 28 at 17-20]

These claims will be dismissed against Officer Gillihand, Warden Bottom, and Commissioner Thompson. None of these persons was directly and personally involved in the conduct complained of; instead, each only responded to Miles's grievance regarding the underlying events. Merely responding to an inmate grievance is not a basis to impose liability. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999); *Alder v. Corr. Medical Services*, 73 F. App'x. 839, 841 (6th Cir. 2003) ("The mere denial of a prisoner's grievance states no claim of constitutional dimension."). And while Miles makes vague suggestions of a conspiracy against him, "[i]t is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory

14

allegations unsupported by material facts will not be sufficient to state such a claim under § 1983." *Heyne v. Metro. Nashville Public Schools*, 655 F. 3d 556, 563 (6th Cir. 2011) (characterizing this pleading standard as "relatively strict."). Miles has failed to plead sufficient facts necessary to state a claim against these defendants.

These claims will also be dismissed against the KDOC and against each of the defendants in his or her official capacity. An "official capacity" claim against a state officer is not a claim against the officer arising out of his or her conduct as an employee of the state, but is actually a claim directly against the state agency which employs them. *Lambert v. Hartman*, 517 F.3d 433, 439-40 (6th Cir. 2008); *Alkire v. Irving*, 330 F.3d 802, 810 (6th Cir. 2003) ("While personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law, individuals sued in their official capacities stand in the shoes of the entity they represent.") (internal quotation marks omitted). The official capacity claims are therefore civil rights claims against KDOC.

However, the KDOC is not subject to suit under § 1983 in federal court, both because a state agency is not a "person" subject to liability under Section 1983, and because the Eleventh Amendment deprives federal district courts of subject matter

jurisdiction over a claim for money damages against a state and its agencies. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 687-88 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court.") (internal quotation marks and citation omitted); *Scott v. Kentucky Department of Corrections*, No. 08-CV-104-HRW, 2008 WL 4083002, at *2 (E.D. Ky. Aug. 29, 2008) ("the Eleventh Amendment has also been interpreted to extend immunity to State employees sued for damages in their official capacities."). The Court therefore will dismiss the claims against KDOC and the defendants in their official capacities.

The Court concludes that the remaining defendants should be served with process to address Miles's surviving claims that they failed to protect him from the nighttime attacks he describes and did so in retaliation for his filing of a grievance. Because the Court has granted Miles *pauper* status [R. 7], the Lexington Clerk's Office and the United States Marshals Service ("USMS") will serve the remaining defendants with a summons and copy of the Second Amended Complaint on his behalf. Fed. R. Civ. P. 4(c)(3) and 28 U.S.C. § 1915(d).

Accordingly, **IT IS ORDERED** that:

1.    All claims set forth in Miles's "Proposed Amended Complaint and Response Memorandum" [R. 27-1 at 1-11] are **DISMISSED.**

16

2.    Miles's claims of discrimination in violation of the Equal Protection Clause [R. 28 at 19-22] is **DISMISSED**.

3.    Miles's claims for the intentional infliction of emotional distress under Kentucky law [R. 28 at 23-25] is **DISMISSED**.

4.    Miles's claims for failure to protect in violation of the Eighth Amendment and retaliation in violation of the First Amendment against Officer Bridgette Gillihand, Warden Don Bottom, and KDOC Commissioner LaDonna Thompson are **DISMISSED**.

5.    A Deputy Clerk in the Lexington Clerk's Office shall prepare a "Service Packet" for:

(a)   Administrative Secretary Supervisor Brad Adams;

(b)   Deputy Warden Rick Rowlette;

(c)   Deputy Warden Gary Prestigiacomo;

(d)   Unit Administrator Craig Hughes;

(e)   Unit Administrator Earl Walls;

(f)   Unit Administrator Mendalyn Cochran;

(g)   Unit Administrator Jack Godbey;

(h)   Unit Administrator Stephanie Hughes; and

(i)   Lieutenant Crain.

Each Service Packet shall include:

(a)   a completed summons form;

(b)   the Second Amended Complaint [R. 28];

17

(c)   this Order; and

(d)   a completed USM Form 285.

6.   The Lexington Deputy Clerk shall deliver the Service Packets to the USMS in Lexington, Kentucky and note the date of delivery in the docket.

7.   The USMS shall personally serve the Service Packets upon each of the defendants by hand delivery at the Northpoint Training Center, 710 Walter Reed Road, Danville, Kentucky, 40310.

This 3rd day of May, 2016.



Signed By:

_Joseph M. Hood_

Senior U.S. District Judge

18