UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

| | | |
|---|---|---|
| DARRELL L. MILES, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 5: 15-CV-126-JMH |
| | ) | |
| V. | ) | |
| | ) | |
| DON BOTTOM, Warden, et al., | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendants. | ) | |

**** **** **** ****

This matter is before the Court on Defendants' Motion for Summary Judgment [DE 79]. Plaintiff filed a Response, styled a as a "Reply" [DE 82], Defendants filed a Reply [DE 87], and this matter is ripe for ruling. For the reasons stated herein, Defendants' motion will be **GRANTED.**

### BACKGROUND

The Court set forth the factual and procedural background of this case in its Memorandum Opinion and Order dated May 3, 2016 [DE 36] and those details need not be repeated here. The gist of Plaintiff's claims is that prison staff retaliated against him for filing a grievance and failed to protect him from attacks by other inmates. The Court screened the complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915(A) and dismissed a number of Plaintiff's claims [DE 36 at 16-17]. Plaintiff's remaining claims are deliberate indifference and retaliation claims against each of the following in their individual capacities: Brad Adams, Rick

1

Rowlette, Gary Prestigiacomo, Craig Hughes, Earl Walls, Mendalyn Cochran, Jack Godbey, Stephanie Hughes, and Lieutenant Crain.

**STANDARD**

Summary judgment is appropriate when citation to facts in the court record, including depositions, documents, affidavits, admissions, and other material, demonstrate there are no genuine issues of material fact. Fed. R. Civ. P. 56 (c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1987). The party moving for summary judgment bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the record it believes demonstrates the absence of a genuine issue of material fact. *See Celotex Corp.*, 477 U.S. at 323. However, "[o]nce the moving party shows that there is an absence of evidence to support the nonmoving party's case, the nonmoving party must present *significant probative evidence* to demonstrate that there is more than some metaphysical doubt as to the material facts." *ACLU v. Mercer County*, 240 F. Supp.2d 623, 624 (E.D.Ky. 2003) (*citing Moore v. Philip Morris Cos.*, 8 F.3d 335, 340 (6th Cir. 1993) (emphasis added) (internal punctuation removed)). The non-moving party may not "rely on subjective beliefs to show a genuine dispute" nor may they "defeat summary judgment by conclusory responses." *ACLU*, 240 F. Supp. 2d at 625. Moreover, "[t]he mere existence of a scintilla of evidence in support of the

plaintiff's position will be insufficient." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252 (1986).

**ANALYSIS**

**Retaliation**

To prove a retaliation claim, a plaintiff must show that each defendant's actions fulfill all of the elements of retaliation. "A retaliation claim essentially entails three elements: (1) the plaintiff engaged in protected conduct; (2) an adverse action was taken against the plaintiff that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two -- that is, the adverse action was motivated at least in part by the plaintiff's protected conduct." *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999). Plaintiff has the burden of proof regarding all three elements. Additionally, Plaintiff must prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001). If Plaintiff makes such a showing, the defendants may still avoid liability by showing "that [they] would have taken the same action in the absence of the protected activity." *Thaddeus-X*, 175 F.3d at 399); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000).

Plaintiff, proceeding *pro se*, has set forth numerous allegations, many of which are difficult to parse out. Defendants do not contest that Plaintiff engaged in protected activity in lodging a complaint against Officer Sarah Buckingham, thus satisfying the first element of a retaliation claim. There is absolutely no evidence, however, that an adverse action was taken against Plaintiff by anyone as a result of his complaint. Thus, Plaintiff's claim for retaliation cannot stand against any of the defendants to this lawsuit and will be dismissed.

Plaintiff appears to argue, at times, that the initial event which led to this lawsuit—allegation that he showed a note to Officer Buckingham on May 1, 2014, offering her $500—was fabricated and *that* was retaliation against him [DE 82, p. 2]; however, he does not offer any evidence of protected conduct that precede this alleged retaliation, therefore failing on the first element of a retaliation claim. Furthermore, there is no evidence to support the May 1, 2014 note allegation was fabricated in retaliation for some unspecified protected conduct, because there is ample evidence in the record the event was not fabricated; Plaintiff was afforded a hearing and an opportunity to defend himself; and the charge of bribery was ultimately reduced to a charge of "pursuing a non-correctional relationship with a non-inmate." [DE 79-1].

At other points in the record Plaintiff argues he suffered retaliation in response to a grievance he filed after the

disciplinary action against him resulting from the May 1, 2014 note to Officer Buckingham. In the grievance he complained that Officer Buckingham was working in his dorm, and he did not feel safe. At the Informal Resolution Stage, Defendant Bridgette Gillihand, Senior Captain, found no conflict in Officer Buckingham working her assigned shift in the dorm where Plaintiff was housed [DE 28, p. 32]. Plaintiff filed an appeal of that decision to the Department of Corrections Commissioner, who found there was "no evidence that the officer is question [was] harassing [Plaintiff]. There [was] every indication that she [was] performing her job duties as required by policy and post orders." [DE 28, p. 33]. The Commissioner further found "no evidence" Plaintiff was in any danger in the presence of Officer Buckingham, and, therefore, no reason to change Officer Buckingham's duty assignment. [*Id.*] Refusing to change staff placement is not evidence of retaliation, particularly where there was "no evidence" that any of the events cited by the inmate actually occurred.

According to Plaintiff, "[s]hortly after the Commissioner's response August 1, 2014, the attacks with feces began and has continued to this date." [DE 28, p. 6]. These nighttime attacks included someone touching Plaintiff's anus and putting feces in his mouth while he slept. Plaintiff argues these nighttime attacks were part of the retaliation he suffered as a result of complaining about the May 1, 2014 incident involving Officer Buckingham and

the subsequent appeal. There is absolutely no evidence these nighttime attacks occurred. Prison officials reviewed videotape of Plaintiff sleeping and found no evidence of anyone bothering Plaintiff in his sleep [DE 87, Ex. 2 and 3 Affidavits of Epperson and Hughes]. Plaintiff further argues part of the retaliation against him included the prison staff's failure to respond to his safety and medical concerns resulting from the alleged nighttime attacks. Plaintiff was examined by medical staff on numerous occasions who also found no evidence that Plaintiff had been sexually assaulted or had feces or other foreign objects in his mouth or throat [DE 87, Ex 4, Affidavit of Crain][DE 28, p. 36-41]. Plaintiff complains he was charged for these sick calls; however, those charges are typical institutional charges for sick calls and not retaliatory in any manner [*Id.*]. Additionally, Plaintiff was placed in protective custody in response to his complaints, and, at other times, refused protective custody when it was offered. [DE 28, p. 31][DE 13, Ex. 7-9].

To prove his claim of retaliation, Plaintiff must show that an adverse action was taken against him because he filed the grievance against Officer Buckingham. Plaintiff cannot put forth any evidence to show that any of the alleged acts of retaliation occurred, and Defendants have submitted significant evidence proving the alleged acts did not occur. Accordingly, there is no genuine issue of material fact on the second element of Plaintiff's

retaliation claim, and all Defendants are entitled to judgment as a matter of law on Plaintiff's retaliation claims.[1]

## Deliberate Indifference

Plaintiff claims prison officials were deliberately indifferent to his safety concerns and his serious medical needs. "To demonstrate deliberate indifference [to an inmate's safety], an inmate must present evidence from which a trier of fact could conclude that the official was subjectively aware of the risk and disregard[ed] that risk by failing to take reasonable measures to abate it." *Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004). The record indicates Plaintiff was placed in protective custody immediately upon reporting the alleged nighttime attacks on one occasion, and was offered protective custody but refused it upon his other reports of attacks and assaults. [DE 28, p. 31][DE 13, Ex. 7-9]. Defendant Lynn Crain investigated Plaintiff's allegations, found "nothing at all to support Inmate Miles' reports of others approaching him or placing substances in his mouth while he slept." [DE 87, Ex. 4, Affidavit of Crain]. Defendant Crain also recommended Plaintiff be seen by a psychologist, which indicates not indifference, but concern for Plaintiff's well-being

---

[1] The Court notes Plaintiff has been involved in other lawsuits related to the same allegations at other penal institutions. In WDKY 5:16-cv-73 the plaintiff claimed he suffered nighttime sexual assaults and had feces placed in his mouth at a different institution. In that case, the Court dismissed the majority of Plaintiff's claims as frivolous, likely the result of the delusions Plaintiff suffers from, as noted in his mental health records. This Court agrees.

[*Id.*]. Furthermore, the Commissioner found no evidence of a threat to Plaintiff's safety from being in proximity to Officer Buckingham. [DE 28, p. 33]. Because the record reflects consistent, meaningful responses to Plaintiff's safety concerns, the Court finds no indifference on the part of any defendant.

"To prove a violation of the Eighth Amendment based on deliberate indifference [to a medical need], a plaintiff must prove both that, objectively, he had 'a serious medical need,' and that, subjectively, the defendant or defendants had 'a sufficiently culpable state of mind' with respect to his condition. *Gunther v. Castineta*, 561 F. App'x 497, 499 (6th Cir. 2014). Plaintiff cannot prove either in this case.

Plaintiff initially complained about nighttime acts against him on November 29, 2014, when he submitted a sick call request [DE 28, p. 30]. Thereafter, Plaintiff was repeatedly seen by medical staff but the medical staff did not find any evidence of assaults or attacks on Plaintiff [DE 28, p. 36-41]. The record shows medical staff examined and evaluated Plaintiff during each sick call, for example, by taking his temperature, his blood pressure, and examining his mouth and throat. Plaintiff was tested for harmful bacteria in his esophagus/stomach and the results were negative (although this same test showed chronic inflammation of the esophagus consistent with reflux) [DE 20]. This test was conducted in May 2015 at a facility outside of the prison system,

and included an endoscopy and a biopsy [DE 20]. The Court notes the physician at Northpoint Training Center (where Plaintiff was incarcerated and where he allegedly experienced deliberate indifference to his medical needs) referred him for the procedure. Plaintiff cannot show that he had a serious medical need as a result of feces in his throat because all the evidence in the record indicates the nighttime feces attacks occurred only in the plaintiff's mind. Furthermore, even if Plaintiff had a serious medical need, Plaintiff cannot show any culpability on the part of any of the defendants, as he was repeatedly seen for sick calls related to the alleged assaults and mouth or throat complaints, and he was referred for an endoscopy to be performed at a facility outside the prison by a physician not employed by the prison. There is no genuine issue of material fact upon which the trier of fact could find that any of the defendants were deliberately indifferent to Plaintiff.

**Conclusion**

Accordingly, and for the reasons stated above, **IT IS ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED**.

This the 6th day of July, 2017.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge